1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7        MARCEL E. CHAPMAN,                        Case No. 22-cv-01446-HSG

8                    Plaintiff,                    **ORDER GRANTING DEFENDANTS'**
                                                   **MOTION FOR SUMMARY**
9             v.                                   **JUDGMENT; DENYING REMAINING**
                                                   **MOTIONS**
10       DOUG RICHARDSON, et al.,
                                                   Re: Dkt. Nos. 13, 15, 16, 20
11                   Defendants.

12

13            Plaintiff, an inmate at Maguire Correctional Facility, has filed a *pro se* action pursuant to

14     42 U.S.C. § 1983 alleging that defendants San Mateo County, San Mateo County Sheriff's Office

15     sergeant Doug Richardson and San Mateo Correctional Health Services nurse Amanda

16     Anguelouch were deliberately indifferent to his serious medical needs in violation of the Eighth

17     Amendment.  Plaintiff alleges that on December 7, 2021, citing defendant San Mateo County's

18     policy that required inmates to wear jail sandals, defendants Richardson and Anguelouch deprived

19     Plaintiff of his medically necessary footwear.

20            This order addresses the following motions: (1) Plaintiff's request for appointment of

21     counsel, Dkt. No. 15; (2) Plaintiff's request for a temporary restraining order, Dkt. No. 16;

22     (3) Plaintiff's request for an extension of time to file an opposition to Defendants' summary

23     judgment motion, Dkt. No. 20; and (4) Defendants' motion for summary judgment, Dkt. No. 13.

24                                        **DISCUSSION**

25     **I.      Plaintiff's Request for Appointment of Counsel**

26            Plaintiff requests appointment of counsel.  Dkt. No. 15.  He states that he is unable to

27     afford counsel; his imprisonment has and will continue to limit his ability to litigate; the issues

28     involved are complex and will require significant research and investigation; he has very limited

United States District Court
Northern District of California

United States District Court
Northern District of California

1   access to the law library and the internet; he has limited knowledge of the law; correctional

2   officials are doing all they can to prevent and hinder Plaintiff in his efforts to prosecute this action;

3   defendant Richardson has delayed or prevented the delivery of Plaintiff's legal mail and books;

4   correctional officials have retaliated against him for filing this action and prevented him from

5   prosecuting this action by denying him normal recreation time or time allotted for case study so

6   that he cannot work on this case; and a trial in this case will likely involve conflicting testimony

7   and counsel would be better able to present evidence and cross-examine witnesses.

8         "Generally, a person has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d

9   965, 970 (9th Cir. 2009).  "However, a court may under 'exceptional circumstances' appoint

10   counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)."  *Id.* (citing *Agyeman v.*

11   *Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v.*

12   *Agyeman*, 545 U.S. 1128 (2005)).  A finding of "exceptional circumstances" requires an

13   evaluation of the likelihood of the plaintiff's success on the merits and of the plaintiff's ability to

14   articulate his claims *pro se* in light of the complexity of the legal issues involved.  *See Agyeman*,

15   390 F.3d at 1103.  Both factors must be viewed together before reaching a decision on a request

16   for counsel under § 1915.  *See id.*

17         The Court DENIES Plaintiff's request for appointment of counsel for lack of exceptional

18   circumstances.  Dkt. No. 15.  The legal issues involved are not complex, and Plaintiff has thus far

19   ably articulated his claims.  In addition, Plaintiff does not have a likelihood of success on the

20   merits.  As explained below, Defendants are entitled to summary judgment as a matter of law.

21   **II.     Plaintiff's Request for Temporary Restraining Order**

22         Plaintiff has requested a temporary restraining order or protective order precluding

23   correctional staff that work for, or with, defendant Richardson from interfering with this civil

24   litigation.  Plaintiff also requests punitive damages.  Dkt. No. 16.  This request is DENIED as

25   moot as the Court grants summary judgment in favor of Defendants.

26         In addition, even if the litigation were to continue, the Court would be required to deny this

27   request for a temporary restraining order because it is unrelated to the claims raised in that it

28   would not grant relief of the same character as that which may be granted finally.  A plaintiff is

<div style="float:left">United States District Court<br>Northern District of California</div>

1   not entitled to an injunction based on claims not pled in the complaint. *Pacific Radiation*

2   *Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). "[T]here must be a

3   relationship between the injury claimed in the motion for injunctive relief and the conduct asserted

4   in the underlying complaint. This requires a sufficient nexus between the claims raised in a

5   motion for injunctive relief and the claims set forth in the underlying complaint itself." There is a

6   sufficient nexus if the interim order "would grant 'relief of the same character as that which may

7   be granted finally.'" *Id.* (citation omitted); *see, e.g., id.* at 636-38 (district court properly denied

8   plaintiff's request for injunction to prevent HIPAA violation, where plaintiff had not asserted

9   HIPAA claim). In his request for a temporary restraining order, Plaintiff seeks relief related to

10   claims not alleged in his complaint. In the request, Plaintiff alleges that defendant Richardson is

11   retaliating against him for filing and prosecuting this action by (1) responding with malice to

12   and/or denying all of Plaintiff's requests and grievances without making any effort to resolve the

13   issues raised; (2) giving or approving disciplinary reports against Plaintiff; and (3) instructing staff

14   to prevent inmates housed at San Mateo hold-over facilities from using tablets, which are the only

15   way inmates can access the courts and the law library. Dkt. No. 16. However, Plaintiff did not

16   raise a retaliation claim in his complaint. Dkt. Nos. 1, 9.

17   **III.    Plaintiff's Request for Extension of Time to Oppose Summary Judgment Motion**

18   Plaintiff has requested an extension of time to respond to Defendants' summary judgment

19   motion. Dkt. No. 20. Plaintiff states that he has been on custody lockdown and has been unable

20   to conduct any legal research. *Id.* Plaintiff's motion is DENIED as moot. Plaintiff has already

21   filed an opposition to Defendants' summary judgment motion. Dkt. No. 17. The motion is fully

22   briefed. Northern District Local Rule 7-3(d) provides that Plaintiff may not file any additional

23   pleadings opposing the summary judgment motion without leave of Court. N.D. Cal. L.R. 7-3(d).

24   **IV.    Defendants' Summary Judgment Motion**

25   Defendants have filed a motion for summary judgment. Dkt. No. 13. Plaintiff has filed an

26   opposition, Dkt. No. 17, and Defendants have filed a reply, Dkt. No. 18. The Court GRANTS

27   Defendants' motion for summary judgment. Dkt. No. 13.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A.      Factual Background[1]

1.      San Mateo County Correctional Facilities Footwear Policies

Per San Mateo County policy, all inmates housed at MSCC are required to wear "jail sandals," which are open-toed shoes with a flexible sole unless the inmate has a medical prescription authorizing alternative footwear for medical needs.  Dkt. No. 13-1 ("Richardson Decl."), at ¶¶ 4, 5.  The policy ensures jail safety and security because the poor traction provided by jail sandals makes it difficult for inmates to run quickly, decreasing the likelihood that they can outrun correctional officers.  Richardson Decl. ¶ 6.  The most common medically authorized alternative footwear is a black closed-toe sneaker-type shoe that is specifically prescribed for inmates with diabetes and is informally called a "diabetic shoe."  Richardson Decl. ¶ 5; Dkt. No. 13-2 ("Anguelouch Decl.") at ¶ 5.  Inmates frequently try to obtain diabetic shoes even if they do not have a medical need for the shoes because diabetic shoes provide more stability and have a better grip, giving inmates an advantage in physical fights and allowing them to run faster.  Richardson Decl. ¶ 6.  Plaintiff has never been in a physical altercation with inmates or staff, and has never attempted to escape.  Dkt. No. 17 at 3.

San Mateo County correctional officers regularly and consistently enforce the County's policy requiring inmates to wear jail sandals unless alternative shoes are medically authorized.  Richardson Decl. ¶ 7.  If officers observe an inmate wearing shoes other than jail sandals and are unaware of that particular inmate's medical need for alternative shoes, they routinely verify whether the inmate has a valid prescription for the shoes.  Richardson Decl. ¶ 7.  If an officer determines that an inmate is wearing alternative shoes but does not have a valid medical prescription for the shoes, the officer confiscates the shoes.  Richardson Decl. ¶ 7.  Correctional Health medical staff also enforce the jail footwear policy by examining inmates, both during annual physical exams and ad hoc medical visits, to determine whether the inmate has a need for alternative footwear.  Anguelouch Decl. ¶ 5.  If the examination indicates a need for alternative shoes, the medical provider will write a prescription and place an order for appropriate footwear.

---

[1] The following facts are undisputed unless otherwise indicated.

1  Anguelouch Decl. ¶ 3.  If the examination indicates that an inmate no longer has a need for

2  alternative shoes, the medical provider will revoke the prior prescription for alternative footwear

3  and confiscate the alternative shoes.  Anguelouch Decl. ¶ 5.

4          San Mateo County also has a policy of not allowing inmates to wear alternative shoes

5  when off the housing units, including during transit to and from court.  Dkt. No. 18-1

6  ("Richardson Suppl. Decl."), ¶ 2.  This policy is to reduce the risk of inmates escaping while in

7  transit.  Richardson Suppl. Decl. ¶ 2.  This policy has been in place for at least twenty years, and

8  is applied to all inmates across all San Mateo County facilities in a neutral manner.  Richardson

9  Suppl. Decl. ¶ 2.  There are certain limited exceptions to this policy, such as when an inmate is

10  going to a medical appointment for the purpose of checking whether the inmate's shoe is a proper

11  fit.  Richardson Suppl. Decl. ¶ 2.

12              **2.      Relevant Events**

13          During the relevant time period, Plaintiff was in the custody of San Mateo County and

14  housed at Maple Street Correctional Center ("MSCC"), and defendant Richardson was acting

15  Housing Sergeant at MSCC.

16          In a past incident, Plaintiff suffered a broken toe that caused nerve damage.  ECF No. 17 at

17  4.  As a result, Plaintiff has lost feeling in the last three toes on his right foot and his right foot

18  drags without his knowledge.  ECF No. 17 at 4-5.  On June 28, 2019, San Mateo Correctional

19  Health Services doctor Spencer issued a memorandum authorizing Plaintiff to have "medical-

20  issued shoes while in custody" and issued him size 11 shoes.  ECF No. 1 at 8; ECF No. 17 at 5.

21  The memorandum does not specify why Dr. Spencer authorized alternative footwear for Plaintiff

22  or what type of shoe was authorized.  ECF No. 1 at 8.  Plaintiff alleges that the memorandum was

23  issued in response to the nerve damage described above and that, pursuant to the memorandum,

24  Plaintiff was allowed to wear closed-toe shoes to protect from injury that might be caused by

25  wearing jail sandals.  ECF No. 17 at 5.  Per this memorandum, Plaintiff's family was allowed to

26  provide him with a pair of closed-toe laceless shoes.  ECF No. 17 at 5.  After San Mateo County

27  changed its policy on personal footwear, San Mateo County provided Plaintiff with a pair of

28  diabetic shoes to comply with the memorandum.  ECF No. 17 at 5.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1          On December 7, 2021, at around 8:00 a.m., defendant Richardson observed Plaintiff

2    wearing diabetic shoes as Plaintiff walked out of his housing unit to join a group of inmates being

3    transported to court for court appearances.  Richardson Decl. ¶ 2.  Defendant Richardson asked if

4    Plaintiff had a prescription for the shoes, and Plaintiff replied that he did.  Richardson Decl. ¶ 2.

5    Defendant Richardson reminded Plaintiff that inmates are required to wear jail sandals when off

6    the housing units, including while in transit to court.  Suppl. Richardson Decl. ¶ 5.  Defendant

7    Richardson ordered Plaintiff to change into his jail sandals.  After some objection, Plaintiff put on

8    his jail sandals.  Suppl. Richardson Decl. ¶ 6.  Defendant Richardson observed Plaintiff walking in

9    his jail sandals and did not observe any irregularity in Plaintiff's gait or any obvious indication

10   that Plaintiff was suffering from pain or discomfort.  Suppl. Richardson Decl. ¶ 7.  Plaintiff alleges

11   that requiring him to wear jail sandals to and from his court appearance put him at risk of further

12   injury in the event that he lost feeling in his foot.  ECF No. 17 at 6.  Plaintiff was transported to

13   and from his court appearance without incident.  ECF No. 17 at 6.

14          Defendant Richardson checked Plaintiff's inmate files and confirmed that Plaintiff had a

15   memorandum dated June 28, 2019, that authorized "medical issued shoes through custody."

16   Richardson Decl. ¶ 2.  Defendant Richardson decided to investigate if the authorization was

17   appropriate since the memorandum did not state a reason for the authorization and defendant

18   Richardson had known Plaintiff for several years and did not know Plaintiff to be suffering from

19   any acute or chronic medical condition.  Richardson Decl. ¶ 13.  Defendant Richardson went to

20   the medical unit and asked defendant Anguelouch to review Plaintiff's medical files to determine

21   whether he had a medical need for diabetic shoes.  Richardson Decl. ¶ 13.  Defendant Anguelouch

22   reviewed Plaintiff's medical files and could not find any indication that he had a medical need for

23   diabetic shoes.  Anguelouch Decl. ¶ 8.  The 2019 memorandum did not specify a medical need for

24   alternative shoes and laboratory tests did not indicate that Plaintiff had diabetes.  Anguelouch

25   Decl. ¶ 8.  Because defendant Anguelouch could not ascertain from Plaintiff's medical files

26   whether he had a medical need for diabetic shoes and Plaintiff's medical files indicated that he

27   was due for a physical examination, defendant Anguelouch scheduled Plaintiff for a same-day

28   physical examination.  Anguelouch Decl. ¶ 9.

6

United States District Court
Northern District of California

1    Plaintiff returned from his court appearance around 4 p.m. and was informed that he was

2    scheduled for a routine physical with defendant Anguelouch.  Anguelouch Decl. ¶ 10.  Plaintiff

3    asked defendant Anguelouch if the physical had anything to do with defendant Richardson.  ECF

4    No. 17.  Defendant Anguelouch stated that while defendant Richardson had inquired earlier that

5    day as to Plaintiff's medical need for alternative shoes, this was a routine physical.  ECF No. 17 at

6    7.  Plaintiff informed defendant Anguelouch that he dislocated his toe in 2017 during his stay at

7    the San Francisco County Jail and a friend popped it back in.  He stated that due to the dislocation,

8    he had numbness in three of his toes and therefore required diabetic shoes.  Anguelouch Decl. ¶

9    10.  Defendant Anguelouch observed that Plaintiff had a normal gait and that there was no visible

10   deformity in his foot.  Anguelouch Decl. ¶ 10.  After examining Plaintiff's foot, defendant

11   Anguelouch informed Plaintiff that, based on her examination of his foot, her medical opinion was

12   that he did not require diabetic shoes.  Anguelouch Decl. ¶ 10.  Plaintiff then refused to complete

13   the remainder of his physical examination and refused a blood draw for a diabetic check.

14   Anguelouch Decl. ¶ 10.  Plaintiff told defendant Anguelouch that the entire situation seemed

15   strange, that he refused the medical visit, and that it seemed like defendant Anguelouch had

16   violated HIPPA by disclosing his medical information to defendant Richardson without his

17   consent.  ECF No. 17 at 7.  Defendant Anguelouch discontinued Plaintiff's authorization for

18   diabetic shoes, and reported to defendant Richardson that the authorization for alternative

19   footwear had been discontinued.  Anguelouch Decl. ¶ 10. Later that day, defendant Richardson

20   directed Plaintiff to surrender his alternative footwear as he longer had authorization for it.

21   Richardson Decl. ¶ 15.

22   Plaintiff is still experiencing foot pain and takes extreme caution to avoid new injuries that

23   might be caused from wearing jail slippers.  ECF No. 17 at 8.

24   **B.    Summary Judgment Standard**

25   Summary judgment is proper where the pleadings, discovery and affidavits show there is

26   "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

27   law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the

28   case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

United States District Court
Northern District of California

1   fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

2   nonmoving party.  *See id.*

3   　　　A court shall grant summary judgment "against a party who fails to make a showing

4   sufficient to establish the existence of an element essential to that party's case, and on which that

5   party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

6   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

7   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

8   burden of identifying those portions of the record that demonstrate the absence of a genuine issue

9   of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings

10  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

11  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324

12  (citing Fed. R. Civ. P. 56(e)).

13  　　　The court's function on a summary judgment motion is not to make credibility

14  determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.*

15  *Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must

16  be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the

17  facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  If the

18  evidence produced by the moving party conflicts with evidence produced by the nonmoving party,

19  the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v.*

20  *Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

21  　　　**C.　　　Legal Standard for Eighth Amendment Medical Needs Claims**

22  　　　Deliberate indifference to a prisoner's serious medical needs violates the Eighth

23  Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S.

24  97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on*

25  *other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

26  banc).  A determination of "deliberate indifference" involves an examination of two elements:

27  the seriousness of the prisoner's medical need and the nature of the defendant's response to that

28  need.  *See McGuckin*, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a

United States District Court
Northern District of California

1    prisoner's condition could result in further significant injury or the "unnecessary and wanton

2    infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). The existence

3    of an injury that a reasonable doctor or patient would find important and worthy of comment or

4    treatment; the presence of a medical condition that significantly affects an individual's daily

5    activities; or the existence of chronic and substantial pain are examples of indications that a

6    prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*,

7    900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he knows

8    that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take

9    reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official

10   must not only "be aware of facts from which the inference could be drawn that a substantial risk of

11   serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have

12   been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

13   matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In

14   order for deliberate indifference to be established, therefore, there must be a purposeful act or

15   failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060.

16          "A difference of opinion between a prisoner-patient and prison medical authorities

17   regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337,

18   1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion

19   as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to

20   establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1068 (9th Cir. 2004). "But

21   this is true only if both dueling medical opinions are medically acceptable under the

22   circumstances." *Porretti v. Dzurenda*, 11 F.4th 1037, 1048 (9th Cir. 2021) (internal quotation

23   marks and citation omitted) (finding that "[w]ith only one credible and medically acceptable

24   recommendation, [plaintiff's] case did not involve a mere disagreement of medical opinion

25   between experts over different acceptable treatments"). In addition, reliance by prison officials

26   upon a second medical opinion which a reasonable person would likely determine to be inferior to

27   one from a more qualified medical authority may amount to an Eighth Amendment violation. *See*

28   *Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (prison's reliance upon medical

1    opinion of doctor who had not examined plaintiff as opposed to plaintiff's regular physician

2    violated prisoner's constitutional rights); *see also Snow v. McDaniel*, 681 F.3d 978, 988-89 (9th

3    Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir.

4    2014) (reliance on opinion of non-treating, non-specialist physicians over specialists who

5    repeatedly recommended hip surgery constituted deliberate indifference where specialists

6    consistently recommended surgery over the course of three years and characterized situation as

7    urgent and emergency).  In order to prevail on a claim involving choices between alternative

8    courses of treatment, a plaintiff must show that the course of treatment chosen was medically

9    unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk

10   to plaintiff's health.  *Id.* at 1058.  A claim of medical malpractice or negligence is insufficient to

11   make out a violation of the Eighth Amendment.  *Id.* at 1060.

### D.    Analysis

#### 1.    Defendants Richardson and Anguelouch

14         Defendants Richardson and Anguelouch argue that they are entitled to summary judgment

15   because there is no genuine issue of material fact as to whether Plaintiff has satisfied either the

16   subjective or objective prong of an Eighth Amendment claim.  In the alternative, defendants

17   Richardson and Anguelouch argue that they are entitled to qualified immunity because there is no

18   clearly established right requiring prison officials to allow a person with Plaintiff's toe condition

19   to refuse jail sandals and be provided alternative footwear, and there is no clearly established right

20   prohibiting defendants Richardson and Anguelouch from investigating whether Plaintiff had a

21   medical need for the alternative footwear.  *See generally* Dkt. No. 13.

22         Plaintiff argues that defendants Richardson and Anguelouch are not entitled to summary

23   judgment because he has a June 28, 2019 medical authorization for alternative footwear for his

24   time in custody; severe nerve damage from a prior toe injury requires that he wear closed toe

25   shoes to protect his feet; defendants Richardson and Anguelouch disregarded his medical

26   prescription when they cancelled his prescription for alternative shoes; and defendants Richardson

27   and Anguelouch conspired with malicious intent to confiscate his shoes in order to show

28

United States District Court
Northern District of California

1  dominance and superiority. *See generally* Dkt. No. 17.[2]

2      The Court GRANTS summary judgment in favor of defendants Richardson and

3  Anguelouch.

4      Viewing the record in the light most favorable to Plaintiff, the Court finds that there is no

5  triable issue of fact as to whether defendants Richardson and Anguelouch violated the Eighth

6  Amendment when (1) defendant Richardson ordered Plaintiff to wear jail sandals during his transit

7  to and from court, and (2) defendant Anguelouch discontinued Plaintiff's prescription for

8  alternative shoes.

9      First, Plaintiff has not presented a triable issue of fact as to the objective component of his

10  Eighth Amendment claim, whether he had a serious medical need that required alternative

11  footwear. For the purpose of summary judgment, the Court presumes that, due to nerve damage

12  caused by a broken toe, Plaintiff has lost feeling in the last three toes on his right foot; that his

13  right foot drags without his knowledge; and that in 2019, prison doctor Spencer determined that

14  alternative footwear was medically necessary due to the potential for injury caused by the lost

15  feeling in Plaintiff's right foot. However, the record does not indicate that, as of December 7,

16  2021, Plaintiff still had a medical need for alternative footwear. The following is undisputed:

17  Plaintiff's medical records did not indicate a chronic condition that requires alternative footwear;

18

19  [2] In his opposition, Plaintiff also argues that defendants Richardson and Anguelouch violated
HIPAA when defendant Anguelouch allowed defendant Richardson to view Plaintiff's medical
20  records; and that defendant Richardson has retaliated against him in various ways for filing a
grievance regarding the confiscation of his diabetic shoes. Dkt. No. 17 at 7-8, 10. Plaintiff did not
21  raise these claims in his complaint. Dkt. Nos. 1, 9. To the extent that Plaintiff is seeking to amend
his complaint, the Court exercises its discretion to deny this request for the following reasons.
22  First, Plaintiff has not alleged a cognizable HIPPA claim because HIPPA does not provide a
private cause of action. *Webb v. Smart Document Sols.*, LLC, 499 F.3d 1078, 1081 (9th Cir.
23  2007). Second, these facts have been known to Plaintiff since the beginning of this action and he
has not previously sought leave to amend the complaint to add a retaliation claim; allowing
24  Plaintiff to amend to add a retaliation claim would require reopening discovery; and disposition of
this case would be unduly delayed by granting amendment at this late stage. *See, e.g., M/V Am.*
25  *Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (trial court
properly exercised discretion in denying leave to amend where "new allegations would totally
26  alter the basis of the action, in that they covered different acts, employees and time periods
necessitating additional discovery [and] a motion for summary judgment was pending and
27  possible disposition of the case would be unduly delayed by granting the motion for leave to
amend"); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)
28  ("A need to reopen discovery and therefore delay the proceedings supports a district court's
finding of prejudice from a delayed motion to amend the complaint.").

United States District Court
Northern District of California

1    alternative footwear is usually prescribed for diabetics and Plaintiff does not have diabetes;

2    defendant Richardson observed that Plaintiff walked in the jail sandals with a normal gait and

3    without any obvious pain or discomfort; a December 7, 2021 physical examination conducted by

4    defendant RN Anguelouch indicated that Plaintiff walked with a normal gait and had no deformity

5    in his toes; and based on her examination, defendant RN Anguelouch concluded that, in her

6    medical judgment, Plaintiff did not have a medical need for alternative footwear.  Defendant

7    Anguelouch's decision to discontinue Plaintiff's authorization for alternative footwear was

8    medically acceptable under the circumstances.  Defendant Anguelouch's decision was based on

9    her visual observation that Plaintiff's gait was normal and on her review of Plaintiff's medical

10   records which did not indicate any specific medical need for alternative footwear, notwithstanding

11   Dr. Spencer's memorandum two years prior.  At most, the record reflects two medically

12   acceptable opinions as to how to treat the nerve damage in Plaintiff's toes, which does not, as a

13   matter of law, state an Eighth Amendment claim.  *Toguchi*, 391 F.3d at 1068.

14          Second, Plaintiff has not presented a triable issue of fact as to whether Defendants acted

15   with the knowledge that their actions would expose Plaintiff to a substantial risk of serious harm.

16          Plaintiff has not presented evidence that defendant Richardson was aware of facts from

17   which an inference could be drawn that wearing jail sandals during Plaintiff's transit to and from

18   his court appearance would expose Plaintiff to a substantial risk of serious harm, or that defendant

19   Richardson drew that inference.  It is undisputed that at the time defendant Richardson required

20   Plaintiff to wear jail sandals while off the housing unit for approximately eight hours, defendant

21   Richardson only knew that (1) Plaintiff stated that he had a prescription for the diabetic shoes;

22   (2) while wearing the jail sandals, Plaintiff had a normal gait and walked without any obvious pain

23   or discomfort; (3) in the years he had known Plaintiff, defendant Richardson had not known

24   Plaintiff to be suffering from any chronic medical condition; and (4) as a general rule with few

25   exceptions, inmates are required to wear jail sandals while off the housing unit.  These facts do not

26   give rise to the inference that Plaintiff faced a substantial risk of serious harm if he wore jail

27   sandals for approximately eight hours, and there is no evidence that defendant Richardson drew

28   this inference.

1    Plaintiff also has not presented evidence that defendant Angeulouch was aware of facts

2    from which an inference could be drawn that discontinuing Plaintiff's prescription for alternative

3    footwear would expose Plaintiff to a substantial risk of serious harm, or that defendant

4    Angeulouch drew that inference.  Defendant Angeulouch decided to discontinue Plaintiff's

5    prescription after examining Plaintiff and reviewing his medical records.  Plaintiff does not

6    dispute that his gait is normal or that, outside of Dr. Spencer's memorandum, there is no indication

7    that he has a specific medical need for alternative footwear.  The record does not support an

8    inference that Plaintiff faced a substantial risk of serious harm if his prescription for jail sandals

9    were discontinued, or suggest that defendant Angelouch knew (or even thought) otherwise.

10                    **2.        Defendant San Mateo County**

11    Under *Monell [v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978)], municipalities are subject to

12    damages under § 1983 in three situations: when the Plaintiff was injured pursuant to an expressly

13    adopted official policy, a long-standing practice or custom, or the decision of a 'final

14    policymaker.'"  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).  In order to

15    hold a municipality liable, the policy, practice, or custom must be the "moving force behind a

16    violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

17    2011).

18    Defendant San Mateo County argues that it is entitled to summary judgment because

19    Plaintiff has not suffered a constitutional violation and because the policy that Plaintiff challenges

20    – that the County prohibits alternative footwear without regard to an inmate's medical needs –

21    does not exist. Dkt. No. 13 at 12-13.  Plaintiff has not addressed these arguments.  Rather, in his

22    opposition, Plaintiff has acknowledged that the County policy requiring inmates to wear jail

23    sandals has an exception for inmates who have a medical prescription for an alternative shoe. Dkt.

24    No. 17-1 at 2.  The Court GRANTS summary judgment in favor of defendant San Mateo County

25    because, as Plaintiff acknowledges, there is no blanket policy requiring inmates to wear jail

26    sandals regardless of medical need, and because, as explained above, there was no constitutional

27    violation.  Defendant Richardson did not violate the Eighth Amendment in requiring Plaintiff to

28    wear jail sandals during his transit to and from court; defendant Angeulouch did not violate the

United States District Court
Northern District of California

13

1    Eighth Amendment by discontinuing Plaintiff's prescription for medical shoes; and defendants

2    Richardson and Anguelouch did not violate the Eighth Amendment by reviewing Plaintiff's need

3    for medical shoes and the validity of the memorandum issued by Dr. Spencer.

### 3.    Qualified Immunity

5    Qualified immunity is an entitlement, provided to government officials in the exercise of

6    their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194,

7    200 (2001).  The doctrine of qualified immunity attempts to balance two important and sometimes

8    competing interests—"the need to hold public officials accountable when they exercise power

9    irresponsibly and the need to shield officials from harassment, distraction, and liability w

10   perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

11   quotation marks and citation omitted).  The doctrine thus intends to take into account the real-

12   world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where

13   the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'"  *Mueller*

14   *v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)).

15   "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes

16   might unnecessarily paralyze their ability to make difficult decisions in challenging situations,

17   thus disrupting the effective performance of their public duties."  *Id.*  To determine whether an

18   officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct

19   violated a constitutional right, and (2) that right was clearly established at the time of the incident.

20   *Pearson*, 555 U.S. at 232.  Courts are not required to address the two qualified immunity issues in

21   any particular order, and instead may "exercise their sound discretion in deciding which of the two

22   prongs of the qualified immunity analysis should be addressed first in light of the circumstances in

23   the particular case at hand."  *Id.* at 236.  Because there was no violation of Plaintiff's

24   constitutional rights, as explained above, there is no need for further inquiry concerning qualified

25   immunity.

### CONCLUSION

27   For the reasons set forth above, the Court orders as follows.

28   1.    The Court DENIES Plaintiff's request for appointment of counsel, Dkt. No. 15;

United States District Court
Northern District of California

14

1     DENIES Plaintiff's request for a temporary restraining order, Dkt. No. 16; and DENIES Plaintiff's

2     request for an extension of time.  Dkt. No. 20.

3              2.       The Court GRANTS Defendants' motion for summary judgment.  Dkt. No. 13.

4     The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff, and close the

5     case.

6              This order terminates Dkt. Nos. 13, 15, 16, 20.

7              **IT IS SO ORDERED.**

8     Dated:    2/13/2023

9

10                                                              HAYWOOD S. GILLIAM, JR.
                                                                United States District Judge